Steven N. Geise (SBN 249969)
JONES DAY
sngeise@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Tel: (858) 314-1200

*[Additional counsel identified on signature page]*
*Counsel for Plaintiffs*
R.J. Reynolds Tobacco Company; R.J. Reynolds
Vapor Company; American Snuff Company, LLC;
Santa Fe Natural Tobacco Company, Inc.;
Neighborhood Market Association, Inc.; and
Morija, LLC dba Vapin' the 619

Tommy Huynh (SBN 306222)
ARNOLD & PORTER KAYE SCHOLER LLP
Tommy.Huynh@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel: (415) 471-3100
Fax: (415) 471-3400

*[Additional counsel identified on signature page]*
*Counsel for Plaintiffs*
Philip Morris USA Inc; John Middleton Co.; U.S.
Smokeless Tobacco Company LLC; and Helix
Innovations LLC.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY; R.J. REYNOLDS VAPOR COMPANY; AMERICAN SNUFF COMPANY, LLC; SANTA FE NATURAL TOBACCO COMPANY, INC.; PHILIP MORRIS USA INC.; JOHN MIDDLETON CO.; U.S. SMOKELESS TOBACCO COMPANY LLC; HELIX INNOVATIONS LLC; NEIGHBORHOOD MARKET ASSOCIATION, INC.; and MORIJA, LLC dba VAPIN' THE 619, <br><br> *Plaintiffs*, <br><br> v. <br><br> XAVIER BECERRA, in his official capacity as Attorney General of California; and SUMMER STEPHAN, in her official capacity as District Attorney for the County of San Diego, <br><br> *Defendants*. | Case No. **'20 CV 1990 LAB RBB** <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs R.J. Reynolds Tobacco Company ("RJRT"), R.J. Reynolds Vapor Company ("RJRV"), American Snuff Company, LLC ("ASC"), Santa Fe Natural Tobacco Company, Inc. ("Santa Fe"), Philip Morris USA Inc. ("PM USA Inc."), John Middleton Co. ("JMC"), U.S. Smokeless Tobacco Company LLC ("UST"), Helix Innovations LLC ("Helix"), Neighborhood Market Association, Inc., and MORIJA, LLC dba Vapin' the 619 bring this action for declaratory and injunctive relief against Defendants Xavier Becerra, in his official capacity as Attorney General of California, and Summer Stephan, in her official capacity as District Attorney for the County of San Diego.

## PRELIMINARY STATEMENT

1.     In an overbroad reaction to legitimate public-health concerns about youth use of tobacco products, the state of California recently enacted the most draconian ban on tobacco products of any state in the nation. California is rightly concerned with youth use of tobacco products. Although youth use of combustible cigarettes is at an all-time low, youth vaping and serious health issues from illicit products are at the heart of a national discussion. But California's new law, Senate Bill 793, strikes far broader than necessary, banning menthol cigarettes, menthol-flavored vapor products, and myriad other flavored tobacco products manufactured and sold by Plaintiffs R.J. Reynolds Tobacco Company, R.J. Reynolds Vapor Company, American Snuff Company, LLC, and Santa Fe Natural Tobacco Company (collectively, "Reynolds"), and by Plaintiffs Philip Morris USA Inc., John Middleton Co., U.S. Smokeless Tobacco Company LLC, and Helix Innovations LLC (collectively, "PM USA"). SB793 also bans flavored tobacco products sold by Plaintiff Vapin' the 619 as well as by members of Plaintiff Neighborhood Market Association.

2.     Reynolds and PM USA are committed to keeping tobacco products out of the hands of youth. Reynolds and PM USA have rigorous standards to ensure their marketing is accurate and responsibly directed to adult tobacco consumers aged

twenty-one and over. Reynolds and PM USA also have strict compliance policies for retailers who sell their products to prevent youth from purchasing tobacco products and support programs that train retailers to comply with age restrictions.

3.     The federal Food and Drug Administration shares Reynolds's and PM USA's goals, and, earlier this year, effectively banned the sale of flavored cartridge-based electronic nicotine delivery system ("ENDS") products (other than tobacco- or menthol-flavored cartridge-based ENDS products). FDA, *Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization (Revised)* 19 (Apr. 2020), *available at* https://www.fda.gov/media/121384/download ("*Enforcement Priorities*"). In fact, the latest report from FDA finds that "1.8 million fewer U.S. youth are currently using e-cigarettes compared to 2019." FDA Statement, *National Survey Shows Encouraging Decline in Overall Youth E-Cigarette Use, Concerning Uptick in Use of Disposable Products* (Sept. 9, 2020), *available at* https://tinyurl.com/y3rpwfph. As FDA recognizes, "[t]his is good news" (*id.*), and it also shows that FDA's efforts as well as those by industry leaders such as Reynolds and PM USA are paying off.

4.     California could have supplemented these efforts by targeting youth usage of vapor products (and other tobacco products) through increased enforcement of age restrictions or public-education campaigns. Instead, Senate Bill 793, which added Article 5 to Chapter 1 of Part 3 of Division 103 of the Health and Safety Code, bans sales to adult tobacco consumers in the state and, moreover, indiscriminately extends the ban to nearly every conceivable flavored tobacco product, from menthol cigarettes and smokeless tobacco to flavored vapor products and other flavored products. This categorical ban is unjustified.

5.     For one, Congress has already banned all characterizing flavors in cigarettes other than tobacco or menthol. 21 U.S.C. § 387g(a)(1)(A). And as to menthol, Congress left it to FDA to determine whether that flavor should be banned

1    when it comes to cigarettes. To date, even though FDA has studied the issue, FDA

2    has chosen not to ban menthol in cigarettes.

3        6.    Moreover, California's law could have adverse public health

4    consequences. FDA's Director of the Center for Tobacco Products has asserted that

5    "[d]ramatically and precipitously reducing availability of [electronic nicotine

6    delivery system products ("ENDS")] could present a serious risk that adults,

7    especially former smokers, who currently use ENDS products and are addicted to

8    nicotine would migrate to combustible tobacco products." *Am. Acad. of Pediatrics v.*

9    *FDA*, No. 8:18-cv-883, Dkt. 120-1, at ¶ 15 (D. Md. filed June 12, 2019) (Decl. of

10   Director of FDA's Center for Tobacco Products Mitchell Zeller) ("Zeller Decl.").

11   This risk of migration is especially pronounced for menthol-flavored products. When

12   FDA previously considered restrictions on flavored ENDS products, FDA declined

13   to impose restrictions on menthol-flavored ENDS products precisely because adults

14   who used those products "may be at risk of migrating back to cigarettes, which

15   continue to be available in menthol flavor, in the absence of access to mint- and

16   menthol-flavored ENDS products." *See* FDA, Modifications to Compliance Policy

17   for  Certain  Deemed  Tobacco  Products  19  (Mar.  2019),  *available  at*

18   https://tinyurl.com/yyywgoat.

19       7.    But not only is California's law misguided, the sweeping ban is also

20   preempted  by  federal  law  and  therefore  unconstitutional  under  the  U.S.

21   Constitution's Supremacy Clause. In addition, California's law violates the dormant

22   Commerce Clause and is thus unconstitutional.

23       8.    *First*, federal law expressly preempts the state's ban on flavored tobacco

24   products. The manufacture of tobacco products is subject to intensive regulation by

25   the federal Government. In striking a balance between federal authority and state

26   authority over the regulation of tobacco products, Congress expressly denied states

27   the ability to promulgate any requirement relating to tobacco product standards that

28   are different from or in addition to federal standards. California's ban on flavored

tobacco products, however, is a product standard because it regulates the ingredients, additives, and properties of those products. California's ban is thus expressly preempted by federal law.

9.     *Second*, federal law also impliedly preempts California's law because the state's ban stands as an obstacle to the purposes of federal law. Congress authorized FDA to promulgate tobacco product standards that, in appropriate circumstances, can establish uniform, national standards for the manufacture of tobacco products and the ingredients used in such products. Congress and FDA have made the judgment that certain tobacco products, particularly menthol cigarettes, should remain available to adult users of tobacco products. California's ban, however, conflicts with those federal goals and must give way.

10.     *Third*, because California's law attempts to regulate manufacturers that are not within the state's borders, the law violates the dormant Commerce Clause. And because California's ban does so, it is unconstitutional and must be set aside.

11.     California has no legitimate interest in enforcing its unconstitutional law. The Court should thus grant injunctive and declaratory relief preventing the Defendants and their agents from violating the U.S. Constitution's Supremacy Clause and Commerce Clause.

## PARTIES

12.     Plaintiff RJRT is a North Carolina corporation headquartered in Winston-Salem, North Carolina. RJRT is a leading manufacturer of tobacco products. In particular, RJRT develops, manufactures, markets, and distributes a variety of flavored tobacco products under a variety of brand names, including menthol cigarettes under the brand names Newport and Camel, among others, and flavored smokeless tobacco products under the brand name Camel SNUS.

13.     Plaintiff RJRV is a North Carolina corporation headquartered in Winston-Salem, North Carolina. RJRV develops, manufactures, markets, distributes, and sells menthol-flavored electronic nicotine delivery devices under the brand name

"VUSE" and a variety of flavored oral nicotine pouches and lozenges under the brand name VELO.

14.   Plaintiff ASC is a North Carolina corporation headquartered in Winston-Salem, North Carolina. ASC develops, manufactures, markets, and distributes a variety of flavored smokeless tobacco products, including under the brand name "Grizzly."

15.   Plaintiff Santa Fe is a New Mexico corporation headquartered in Oxford, North Carolina. Santa Fe develops, manufactures, markets, and distributes menthol cigarettes under the brand name Natural American Spirit.

16.   All of the aforementioned flavored products manufactured and distributed by RJRT, RJRV, ASC, and Santa Fe qualify as "flavored tobacco product[s]" that are prohibited under Senate Bill 793.

17.   Plaintiff PM USA Inc. is a Virginia corporation and has its principal place of business in Richmond, Virginia. PM USA Inc. is a leading manufacturer of cigarettes in the United States. PM USA Inc. sells cigarettes under a number of leading brands, including Marlboro, Parliament, Virginia Slims, and L&M. Certain of PM USA Inc.'s products qualify as "flavored tobacco product[s]" that are prohibited under Senate Bill 793.

18.   Plaintiff JMC is a Pennsylvania limited liability company and has its principal place of business in Pennsylvania. JMC manufactures pipe tobacco and large machine-made cigars under a variety of brands, including Black & Mild, Kentucky Club, and Prince Albert. Certain of JMC's products qualify as "flavored tobacco product[s]" that are prohibited under Senate Bill 793.

19.   Plaintiff UST is a Virginia limited liability company and has its principal place of business in Richmond, Virginia. UST manufactures moist smokeless tobacco under a variety of brand names, including Copenhagen, Skoal, Red Seal, and Husky. Certain of UST's products qualify as "flavored tobacco product[s]" that are prohibited under Senate Bill 793.

20.     Plaintiff Helix is a Delaware limited liability company and has its principal place of business in Richmond, Virginia. Helix manufactures oral nicotine pouches under the brand name "on!". Certain of Helix's products qualify as "flavored tobacco product[s]" that are prohibited under Senate Bill 793.

21.     Neighborhood Market Association is a local non-profit industry trade association comprised of various family-owned businesses within San Diego County, California. The Association has members who are tobacco retailers, wholesalers, and manufacturers located within the County that will be subject to Senate Bill 793 once it goes into effect. Many of the Association's tobacco retailers sell flavored tobacco products, including those manufactured by RJRT, RJRV, ASC, and Santa Fe. Those retailers will no longer be able to sell "flavored tobacco product[s]," as defined in Senate Bill 793, once the law goes into effect. But for Senate Bill 793, those members who currently sell flavored tobacco products would continue to do so to consumers in California. Dozens of NMA's members, including Vapin' the 619, will likely have to close shop completely and lay off their employees if California's ban goes into effect.

22.     MORIJA, LLC is headquartered in El Cajon, California. The company does business as Vapin' the 619 and is a tobacco retailer with a retail establishment located on Clairemont Mesa Boulevard in the City of San Diego, California. The establishment exclusively sells electronic smoking devices and e-liquid tobacco products used in conjunction with such devices. In particular, the establishment sells flavored tobacco products as defined in Senate Bill 793. Vapin' the 619 will no longer be able to sell "flavored tobacco product[s]," as defined in Senate Bill 793, once the law goes into effect. But for Senate Bill 793, Vapin' the 619 would continue to sell flavored tobacco products to consumers in California. If Senate Bill 793 does go into effect, Vapin' the 619 will likely have to close its store permanently and lay off its employees.

23.     Defendant Xavier Becerra is sued in his official capacity as Attorney General of California. The Attorney General is "the chief law officer of the state" and exercises "direct supervision over every district attorney." Cal. Const. art. V, § 13. The California Constitution also imposes on the Attorney General the duty "to prosecute any violations of law" and grants him "all the powers of a district attorney" whenever he believes that the law is not being adequately enforced. *Id.* Because a violation of Senate Bill 793 is an "infraction," the Attorney General has direct enforcement power of the law and supervises district attorneys who also have enforcement power. Cal. Gov. Code § 26500 ("[t]he district attorney is the public prosecutor" who "shall initiate and conduct on behalf of the people all prosecutions for public offenses"); *see also* Cal. Penal Code § 16 (defining "[c]rimes and public offenses" to include "infraction[s]").

24.     Defendant Summer Stephan is sued in her official capacity as District Attorney for the County of San Diego. As District Attorney, Stephan has the power to enforce Senate Bill 793 because a violation of that law is an "infraction." Cal. Gov. Code § 26500 ("[t]he district attorney is the public prosecutor" who "shall initiate and conduct on behalf of the people all prosecutions for public offenses"); *see also* Cal. Penal Code § 16 (defining "[c]rimes and public offenses" to include "infraction[s]").

## JURISDICTION AND VENUE

25.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

26.     This Court also has authority to grant relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

27.     This judicial district is the proper venue under 28 U.S.C. § 1391(b)(2) because it is where a substantial part of the events giving rise to the claims occurred and where the effects of Senate Bill 793 will be felt. Prior to Senate Bill 793's enactment, Reynolds's and PM USA's flavored tobacco products were sold by

retailers in this judicial district, including Reynolds's products by members of Neighborhood Market Association. In addition, prior to Senate Bill 793's enactment, members of Neighborhood Market Association as well as Vapin' the 619 sold flavored tobacco products in this judicial district. Senate Bill 793 forbids the sale of nearly all flavored tobacco products in this judicial district, and will thus cause financial injury to Plaintiffs in this district.

## BACKGROUND

### The Tobacco Control Act and Federal Regulation of Tobacco Products

28.     The Family Smoking Prevention and Tobacco Control Act of 2009, Public Law 111-31, 123 Stat. 1776 (June 22, 2009), amended the Federal Food, Drug, and Cosmetic Act and established the U.S. Food and Drug Administration as "the primary Federal regulatory authority with respect to the manufacture, marketing, and distribution of tobacco products." *Id.* § 3(1), 123 Stat. at 1781 (codified at 21 U.S.C. § 387 note). The Tobacco Control Act applies to cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco products, as well as to any other tobacco products that FDA by regulation deems subject to the Act. 21 U.S.C. § 387a(b). The Act defines "tobacco product" as "any product made or derived from tobacco that is intended for human consumption." 21 U.S.C. § 321(rr)(1).

29.     In 2016, FDA exercised its deeming authority, 21 U.S.C. § 387a(b), to bring within its regulatory authority all products meeting the statutory definition of a tobacco product, except accessories of the newly deemed tobacco products. *See Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products*, 81 Fed. Reg. 28,974 (May 10, 2016).

30.     Congress passed the Tobacco Control Act to, *inter alia*, "authorize the [FDA] to set national standards controlling the manufacture of tobacco products and the … amount of ingredients used in such products." Tobacco Control Act § 3(3),

123 Stat. at 1782 (codified at 21 U.S.C. § 387 note). To that end, the Act empowers FDA to adopt "tobacco product standards," 21 U.S.C. § 387g, including "provisions respecting the … additives … [and] properties of the tobacco product," *id.* § 387g(a)(4)(B)(i). The term "additives" includes "substances intended for use as a flavoring." *Id.* § 387(1).

31.    The Act also directly created tobacco product standards such as a "Special Rule for Cigarettes." The Special Rule for Cigarettes bans the use in cigarettes of "characterizing flavor[s]" "other than tobacco or menthol." 21 U.S.C. § 387g(a)(1)(A). But the Act expressly reserves "menthol cigarettes" to FDA's regulatory authority. *See id.* (noting "the Secretary's authority to take action . . . applicable to menthol"). To date, the FDA has chosen not to ban the use of menthol in cigarettes.

32.    In fact, FDA has issued advance notices of proposed rulemaking ("ANPRMs") contemplating the adoption of "tobacco product standard[s]" banning various flavored tobacco products, including menthol cigarettes and flavored vapor products. *See, e.g.*, *Menthol in Cigarettes, Tobacco Products; Request for Comments*, 78 Fed. Reg. 44,484, 44,485 (July 24, 2013); *Regulation of Flavors in Tobacco Products*, 83 Fed. Reg. 12,294, 12,299 (Mar. 21, 2018). But it has never banned menthol in cigarettes. And studies have shown that menthol cigarettes do not adversely affect initiation of or progression to smoking, and there is no clear association between menthol use and decreased smoking cessation. *See* RAI Services Company, *Comment Letter on Advance Notice of Proposed Rulemaking Regarding Regulations of Flavors in Tobacco Products* (July 18, 2018), *available at* https://www.regulations.gov/document?D=FDA-2017-N-6565-18265.

33.    The Tobacco Control Act expressly preempts state or local regulations that set forth requirements "different from, or in addition to," any of the Tobacco Control Act's or FDA's requirements relating to federal "tobacco product standards." *Id.* § 387p(a)(2)(A) ("Tobacco Preemption Clause"). The Tobacco Preemption

Clause ensures that tobacco product manufacturers will have to comply with just one set of product specifications nationwide—rather than having to grapple with potentially hundreds of different requirements set by different states and local jurisdictions governing the same products. *See* Tobacco Control Act § 3(3), 123 Stat. 1782 (codified at 21 U.S.C. § 387 note).

34.   The Tobacco Control Act also contains a narrow saving clause, which provides that the Tobacco Preemption Clause "does not apply to requirements relating to the sale [and] distribution . . . of . . . tobacco products by individuals of any age." *Id.* § 387p(a)(2)(B). But the saving clause narrows the category of permissible state and local requirements to those that turn on the "age" of the "individuals" buying or using the regulated tobacco products. *See id.* And even if the saving clause applies beyond age-based requirements, the clause does not protect state and local laws that prohibit a product's sale and distribution altogether, but rather only more limited laws that regulate the time, place, and manner of the product's sale and distribution. *Compare id.*, *with id.* § 387p(a)(1).

### **Plaintiffs and FDA Work To Keep Tobacco Products Away from Youth**

35.   The original motivation for California's ban on flavored tobacco products was to prevent youth usage of tobacco products. *See* Sen. Hill, *SB 793 Frequently Asked Questions* (2020), *available at* https://tinyurl.com/yyomllfx. Both Plaintiffs and FDA are committed to keeping tobacco products out of the hands of youth.

36.   Reynolds and PM USA have taken active steps to prevent youth access to their products. Reynolds and PM USA are original sponsors and lead participants in the We Card program. Reynolds and PM USA require their contracted retailers to commit to participating in We Card. Since this partnership began in 1995, We Card has trained nearly half a million storeowners, managers, and frontline employees to help prevent youth access to tobacco products.

37.     Reynolds has expanded those efforts, including through use of We Card's "mystery shopper" program, which also will provide additional retailers with further education and training on verifying legal age of purchasers.

38.     In 2018, RJRV took targeted action to ensure youth were not obtaining its vapor products. The company instituted a contract-based tiered compliance program that involves penalties on retailers that are found to have illegally sold VUSE products to youth. In conjunction with this program, RJRV also has its trade marketing representatives discussing the issue of underage youth access with each of RJRV's contracted retailers on an ongoing basis. And the company provides access to additional materials and resources on preventing youth access to tobacco products via its online customer portal, engageVIP.com.

39.     In 2019, PM USA announced a new retailer incentive program to further encourage responsible retailing through age-validation technology at the point of purchase. To participate in the incentive program, retailers must implement a technological solution at a store's point(s) of purchase, requiring the electronic scan of a consumer's government-issued identification to complete a sales transaction involving the purchase of a tobacco product.

40.     FDA also has specifically addressed concerns about youth vaping. In a recent guidance for industry, FDA states that it "intends to prioritize enforcement for lack of marketing authorization against any flavored, cartridge-based ENDS product (other than a tobacco- or menthol-flavored ENDS product) that is offered for sale in the United States without regard to whether or when premarket application for such product has been submitted." FDA, *Enforcement Priorities* 19. By way of background, when FDA promulgated its Deeming Rule, it brought ENDS products within its regulatory umbrella—meaning that before the products were sold, they needed FDA authorization. 81 Fed. Reg. 28,974. At the time, FDA said it would use its enforcement discretion and allow the products to stay on the market for some time even if they had not received FDA authorization. *Id.* at 28,977–78. FDA has now

changed course with regard to flavored, cartridge-based ENDS products (other than those that are tobacco- or menthol-flavored). FDA, *Enforcement Priorities* 19. The upshot of the new policy is that flavored, cartridge-based ENDS products (other than those that are tobacco- or menthol-flavored) can no longer be sold, unless and until FDA grants authorization for such products.

41.     In addition, as part of the same guidance referred to above, FDA stated that it would prioritize enforcement against ENDS products for which the manufacturer has failed to take adequate measures to prevent minors' access. *Id.* at 3. And FDA will make enforcement a priority with respect to ENDS products that are "targeted to minors or whose marketing is likely to promote use of ENDS by minors." *Id.*

42.     FDA has also issued numerous warning letters to entities that are improperly marketing or selling "unauthorized flavored, cartridge-based ENDS products" and other ENDS products that are being marketed or sold in ways that are appealing to youth. *See, e.g.*, FDA News Release, *FDA Warns Manufacturers and Retailers to Remove Certain E-cigarette Products Targeted to Youth from the Market* (Apr. 27, 2020), *at* https://tinyurl.com/ybg9yny3 (announcing warning letters); FDA News Release, *FDA Notifies Companies, Including Puff Bar, to Remove Flavored Disposable E-Cigarettes and Youth-Appealing E-Liquids from Market for Not Having Required Authorization* (July 20, 2020), *at* https://tinyurl.com/y4shrbuj.

43.     Importantly, however, FDA has decided to allow the sale of menthol-flavored ENDS products. That is, in part, to allow menthol cigarette smokers to transition to other "potentially less harmful" menthol-flavored products and also because "[d]ata shows that . . . menthol-flavored ENDS products are not as appealing to minors as other flavored ENDS products." FDA, *Enforcement Priorities* 23–24, 39. In FDA's view, "[t]his approach"—effectively banning flavors except for menthol and tobacco—"strikes an appropriate balance between restricting youth access to such products, while maintaining availability of potentially less harmful

options for current and former adult smokers who have transitioned or wish to transition completely away from combusted [tobacco- and menthol-flavored] tobacco products." *Id.* at 20. And, as of September 9, 2020, virtually all ENDS products must be off the shelves unless the product is the subject of a timely filed premarket tobacco product application under review by FDA. *Id.* at 3.

**The State's Categorical Ban on Flavored Tobacco Products**

44.    On August 28, 2020, the Governor of California signed Senate Bill 793 into law, banning the sale of nearly all flavored tobacco products anywhere in the state. A copy is attached to this Complaint as Exhibit 1.

45.    The law states that tobacco retailers "shall not sell, offer for sale, or possess with the intent to sell or offer for sale, a flavored tobacco product or a tobacco product flavor enhancer." SB 793 § 14559.5(b)(1).

46.    The law defines "[f]lavored tobacco product" as "any tobacco product that contains a constituent that imparts a characterizing flavor." *Id.* § 104559.5(a)(4). "Tobacco product" means "[a] product containing, made, or derived from tobacco or nicotine that is intended for human consumption." Cal. Health & Safety Code § 104495(8)(A)(i). "Tobacco product" explicitly includes "cigarettes," "chewing tobacco," "snuff," and electronic nicotine delivery systems. *Id.* §§ 104495(a)(8)(A)(i), (a)(8)(A)(ii). Senate Bill 793 defines "[c]haracterizing flavor" as "a distinguishable taste or aroma, or both, other than the taste or aroma of tobacco, imparted by a tobacco product or any byproduct produced by the tobacco product." SB 793 § 104559.5(a)(1). The definition explicitly includes "menthol." *Id.* The sales ban excludes a handful of products sold in certain situations, including shisha tobacco products, premium cigars, and loose leaf pipe tobacco. *Id.* §§ 104559.5(c), (d), (e).

47.    A person who violates the law "is guilty of an infraction and shall be punished by a fine of two hundred fifty dollars ($250) for each violation." *Id.* § 104559.5(f).

48.    In short, the law bans nearly all kinds of flavored tobacco products, including the sale of all menthol flavored cigarettes, menthol flavored e-cigarettes, flavored smokeless tobacco products, and other flavored products.

49.    The ban on flavored tobacco products will go into effect on January 1, 2021. *See* Cal. Const. art. IV, § 8(c).

## Plaintiffs' Products

50.    Plaintiffs RJRT, RJRV, ASC and Santa Fe collectively manufacture numerous tobacco products, which are subject to California's prohibition on flavored tobacco products and which Plaintiffs would continue distributing for resale in the state—including in this District—but for Senate Bill 793.

51.    RJRT manufactures and sells various tobacco products—including products with characterizing flavors, such as menthol cigarettes, as well as cigarettes that do not have characterizing flavors—under a variety of brand names, including Newport and Camel. RJRT also sells other tobacco-related products, including flavored smokeless tobacco products, under the brand name Camel SNUS.

52.    RJRV manufactures and sells tobacco products. Those include menthol- and tobacco-flavored vaping products, under the brand name VUSE, as well as a variety of flavored tobacco products under the brand name VELO.

53.    ASC manufactures and sells various smokeless tobacco products—including products with and without characterizing flavors—under the brand name "Grizzly."

54.    Santa Fe manufactures and sells various tobacco products—including menthol cigarettes as well as cigarettes that do not have characterizing flavors—under the brand name Natural American Spirit.

55.    RJRT, RJRV, ASC and Santa Fe each desires to continue distributing banned "flavored tobacco products" for resale within California.

56.    Plaintiffs PM USA Inc., JMC, UST, and Helix collectively manufacture numerous tobacco products which are subject to California's prohibition on flavored

tobacco products and which Plaintiffs would continue distributing for resale in the state—including this District—but for Senate Bill 793.

57.     Plaintiffs PM USA Inc., JMC, UST, and Helix each desires to continue distributing banned "flavored tobacco products" for resale within California.

58.     Plaintiff Neighborhood Market Association has members who are tobacco retailers and who sell numerous "flavored tobacco product[s]," which are subject to California's prohibition on the sale of flavored tobacco products and which those members would continue selling in this state—including in this District—but for Senate Bill 793. In particular, members of Neighborhood Market Association sell menthol cigarettes, flavored smokeless tobacco products, flavored vapor products, and other flavored products, including products manufactured by Reynolds. Those members desire to continue selling banned "flavored tobacco product[s]" within the state of California, including in this District.

59.     Plaintiff Vapin' the 619 is a tobacco retailer that sells "flavored tobacco product[s]," which are subject to California's prohibition on the sale of flavored tobacco products and which Vapin' the 619 would continue selling in this state—including in this District—but for Senate Bill 793. In particular, Vapin' the 619 sells flavored vapor products. Vapin' the 619 desires to continue selling banned "flavored tobacco product[s]" within the state of California, including in this District.

60.     The Act's categorical ban on "flavored tobacco product[s]" harms RJRT, RJRV, ASC, Santa Fe, PM USA Inc., JMC, UST, Helix, members of Neighborhood Market Association, and Vapin' the 619 because it severely restricts their ability to market and sell such products to customers in California.

**CLAIMS FOR RELIEF**

**COUNT I**

**Express Preemption**

61.     The preceding paragraphs are incorporated and re-alleged here.

62.   The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, state laws that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

63.   As of the effective date of Senate Bill 793, Plaintiffs can no longer "sell" "flavored tobacco product[s]" in the state. SB 793 § 104559.5(b)(1). Any violation can result in fines. *Id.* § 104559.5(f).

64.   Under the Tobacco Control Act's preemption clause, the state is prohibited from enacting and enforcing laws that are "different from, or in addition to," any of the Tobacco Control Act's or FDA's requirements relating to federal "tobacco product standards." 21 U.S.C. § 387p(a)(2)(A). The state's ban on flavored tobacco products is "different from, or in addition to," the requirements of federal law, and is thus preempted.

65.   Accordingly, the Tobacco Control Act preempts California's ban on flavored tobacco products, rendering it invalid and unenforceable.

## COUNT II

### Implied Preemption

66.   The preceding paragraphs are incorporated and re-alleged here.

67.   "Obstacle preemption" occurs when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000).

68.   One purpose of the Tobacco Control Act is "to authorize the [FDA] to set national standards controlling the manufacture of tobacco products and the … amount of ingredients used in such products." Tobacco Control Act § 3(3), 123 Stat. at 1782 (codified at 21 U.S.C. § 387 note).

69.   California's ban on flavored tobacco products directly undermines FDA's ability to set such national standards.

70.     Another purpose of the Tobacco Control Act is "to continue to permit the sale of tobacco products to adults" while making them inaccessible to minors. *Id.* § 3(7), 123 Stat. at 1782 (codified at 21 U.S.C. § 387 note). To that end, FDA has elected to allow menthol cigarettes to stay on the market. *See id.* § 387g(a)(1)(A). Menthol cigarettes thus can remain on the market unless and until FDA properly determines that they must be removed from the market. *See id.*

71.     Consistent with its federal authority, FDA has been exploring regulation of flavors in tobacco products. *See, e.g.*, *Menthol in Cigarettes, Tobacco Products; Request for Comments*, 78 Fed. Reg. 44,484, 44,485 (July 24, 2013); *Regulation of Flavors in Tobacco Products*, 83 Fed. Reg. 12,294, 12,299 (Mar. 21, 2018); FDA, *Enforcement Priorities* 19 (announcing policy that effectively bans the sale of any flavored, cartridge-based ENDS product (*other than a tobacco- or menthol-flavored* ENDS product)). In addition, FDA is currently engaged in efforts to address concerns about youth use of flavored vapor products. Indeed, in a recent guidance for industry, FDA states that it "intends to prioritize enforcement for lack of marketing authorization against any flavored, cartridge-based ENDS product (other than a tobacco- or menthol-flavored ENDS product)." FDA, *Enforcement Priorities* 19. In other words, flavored, cartridge-based ENDS products (other than those that are tobacco- or menthol-flavored) can no longer be sold, unless and until FDA grants authorization for such products. In issuing its guidance, FDA made the specific judgment that menthol-flavored ENDS products could remain on the market.

72.     California's ban also interferes with the method that Congress chose to effectuate the goals of the Tobacco Control Act. Congress created a detailed regulatory process as the sole method for evaluating the design and sale of new tobacco products such as ENDS. *See* 21 U.S.C. § 387j. By creating that singular channel, Congress intended to subject each new tobacco product to one regulatory assessment conducted by FDA, not multiple rounds of assessments by states. FDA is thus the sole entity charged with striking "an appropriate balance of complex and

competing public health and agency resource considerations," including the benefits of innovation and the risk that former smokers would revert "from potentially less harmful ENDS products back to combustible tobacco products." Zeller Decl. ¶¶ 11–12.

73.     By creating a holistic regulatory process for the evaluation of new tobacco products, Congress clearly signaled that it did not intend for states to interfere with FDA's evaluation. But that is precisely what California Senate Bill 793 threatens to do. If Senate Bill 793 stands, then every state could create its own standards and review processes, upending the pathway Congress designated as the sole path for evaluating new tobacco products.

74.     California's ban on flavored tobacco products directly conflicts with the federal government's ongoing and active efforts to address flavors in tobacco products, and is therefore preempted.

75.     Accordingly, the Tobacco Control Act preempts California's law, rendering it invalid and unenforceable.

## COUNT III

### Commerce Clause

76.     The preceding paragraphs are incorporated and re-alleged here.

77.     The Dormant Commerce Clause provides a "self-executing limitation on state authority to enact laws imposing substantial burdens on interstate commerce even in the absence of Congressional action." *United Egg Producers v. Dep't of Agric. of Puerto Rico*, 77 F.3d 567, 570 (1st Cir. 1996).

78.     The dormant Commerce Clause prohibits California from enforcing a law that "regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2471 (2019); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

79.   The dormant Commerce Clause specifically prohibits "the application of a state statute to commerce that takes places wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336 (1989). When a state directly regulates interstate commerce, it "exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.*

80.   California's SB 793 violates the dormant Commerce Clause because it dictates how out-of-state manufacturers must manufacture their products. By banning characterizing flavors in most tobacco products, California has attempted to dictate how out-of-state manufacturers produce their tobacco products. The law thus directly regulates interstate commerce and exceeds the inherent limits of the Commerce Clause.

81.   Accordingly, California's law is unenforceable under the Commerce Clause.

## REQUEST FOR RELIEF

Plaintiffs request that this Court grant the following relief:

82.   Pursuant to 28 U.S.C. § 2201, declare that under the Supremacy Clause of the United States Constitution, federal law preempts Senate Bill 793's ban on flavored tobacco products, rendering it invalid and unenforceable.

83.   Pursuant to 28 U.S.C. § 2201, declare that Senate Bill 793 is invalid and unenforceable under the Commerce Clause of the United States Constitution.

84.   Under Federal Rule of Civil Procedure 65, preliminarily enjoin Defendants and their agents from enforcing or implementing the state's ban on flavored tobacco products;

85.   Permanently enjoin Defendants and their agents from enforcing or implementing California's ban on flavored tobacco products;

86.     Award Plaintiffs their costs and disbursements associated with this litigation under 28 U.S.C. § 2412 and other applicable authority; and

87.     Provide such other relief as the Court deems appropriate.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2  Dated: October 9, 2020            Respectfully submitted,

3                                    JONES DAY

4

5                                    By: /s/ Steven N. Geise
                                        Steven N. Geise
6                                       sngeise@jonesday.com

7                                    Christian G. Vergonis*
                                     Ryan J. Watson*
8                                    Andrew Bentz*
                                     JONES DAY
9                                    51 Louisiana Ave., N.W.
                                     Washington, D.C. 20001
10                                   Tel: (202) 879-3939
                                     Fax: (202) 626-1700
11                                   * pro hac application forthcoming

12                                   Attorney for Plaintiffs
                                     R.J. REYNOLDS TOBACCO COMPANY; R.J.
13                                   REYNOLDS VAPOR COMPANY; AMERICAN
                                     SNUFF COMPANY, LLC; SANTA FE
14                                   NATURAL TOBACCO COMPANY, INC.;
                                     NEIGHBORHOOD MARKET ASSOCIATION,
15                                   INC.; and MORIJA, LLC dba VAPIN' THE 619

16                                   ARNOLD & PORTER KAYE SCHOLER LLP

17

18                                   By: /s/ Tommy Huynh
                                        Tommy Huynh
19                                      Tommy.Huynh@arnoldporter.com

20                                   Lisa S. Blatt (pro hac application forthcoming)
                                     Sarah M. Harris (pro hac application
21                                   forthcoming)
                                     WILLIAMS & CONNOLLY LLP
22                                   725 Twelfth Street NW
                                     Washington, D.C. 20005
23                                   Tel: (202) 434-5000
                                     Fax: (202) 434-5029
24

25                                   Attorney for Plaintiffs
                                     PHILIP MORRIS USA INC; JOHN
26                                   MIDDLETON CO.; U.S. SMOKELESS
                                     TOBACCO COMPANY LLC; and HELIX
27                                   INNOVATIONS LLC.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF